# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL TRUMP | : | CIVIL ACTION - LAW |
| 61 West King Street | | |
| Pottstown, PA 19464 | : | NO. |
| | | |
| v. | : | ASSESSMENT OF DAMAGES |
| | | HEARING IS REQUIRED |
| COUNTY OF MONTGOMERY | : | |
| d/b/a Montgomery County | | JURY TRIAL DEMANDED |
| Correctional Facility | : | |
| 60 Eagleville Road | | |
| Eagleville, PA 19403 | : | |
| and | | |
| CORRECTIONAL OFFICER "HOYT" | : | |
| and | | |
| CORRECTIONAL OFFICER "COAKLEY" | : | |
| and | | |
| CORRECTIONAL OFFICER "SMALL" | : | |
| and | | |
| JOHN DOE | : | |

## PLAINTIFF'S CIVIL ACTION COMPLAINT

Plaintiff, Michael Trump, by and through his counsel, Jeffrey I. Zimmerman, Esquire and Jeffrey D. Schmidt, Esquire, state the following as his Complaint:

## THE PARTIES

1.  The Plaintiff, Michael Trump, is an adult individual and resides at 61 West King Street, Pottstown, PA 19464.

2.  The Defendant, County of Montgomery d/b/a Montgomery County Correctional Facility, is a corporation created and existing under the laws of the Commonwealth of Pennsylvania with an office for acceptance of service and a principle place of business at 60 Eagleville Road, Eagleville, PA 19403, and conducting business in said Commonwealth.

3. The Defendant, Correctional Officer "Hoyt," is an adult individual and a correctional officer employed by Defendant with an office for acceptance of service at 60 Eagleville Road, Eagleville, PA 19403.

4. The Defendant, Correctional Officer "Coakley," is an adult individual and a correctional officer employed by Defendant with an office for acceptance of service at 60 Eagleville Road, Eagleville, PA 19403.

5. The Defendant, Correctional Officer "Small," is an adult individual and a correctional officer employed by Defendant with an office for acceptance of service at 60 Eagleville Road, Eagleville, PA 19403.

6. The Defendant, John Doe, is an unknown and unidentified correctional officer, who has an address or an office for acceptance of service at 60 Eagleville Road, Eagleville, PA 19403 and, pursuant to Pa. R.C.P. Rules 1018 and 2005, Plaintiff avers that:

    (a) the Plaintiff has conducted reasonable investigation and has been unable to ascertain John Doe actual identity;

    (b) the designation of John Doe is fictitious;

    (c) John Doe was a correctional officer employed by Defendant, County of Montgomery d/b/a Montgomery County Correctional Facility and was acting within the course and scope of his employment;

    (d) a reasonable search has been conducted to determine the actual name of John Doe.

7. At all times material and relevant to the instant matter, the Defendant correctional officers were working and acting within the course and scope of their employment and/or agency.

**JURISDICTION**

8. The cause of action described hereinafter accrued in the Commonwealth of Pennsylvania, Montgomery County, the location of the accident causing injury to the Plaintiff and giving rise to the instant litigation.

9. The United States District Court of the Eastern District of Pennsylvania has original jurisdiction of Plaintiffs' claims pursuant to 28 U.S.C.A. §1331, a the instant matter involves a federal question.

10. Venue in this Civil Action is proper pursuant to 28 U.S.C. §1391(a)(2), as a substantial part of the events and omissions giving rise to this claim occurred herein and the Defendant is subject to personal jurisdiction within the Commonwealth of Pennsylvania.

**FACTUAL BACKGROUND**

11. At all times material and relevant to the instant Complaint, the Defendants herein owned, operated, managed, controlled and/or supervised the daily operations and running of a prison, jail, incarceration facility, detention center and/or correctional facility known and designated as "Montgomery County Correctional Facility" and located at 60 Eagleville Road, Eagleville, Pennsylvania 19403.

12. At all times material and relevant hereto, the Defendant's prison facility was operated and staffed by prison guards and correctional officers, including but not limited to Correctional Officer "Hoyt," Correctional Officer "Coakley," Correctional Officer "Small" and John Doe, said individuals who were trained by and under the supervision and control of the Defendant and acted pursuant to the Defendant's policies, procedures and customs.

13. At all times material and relevant hereto, the above said prison guards and correctional officers acted pursuant to, and in conformance with, the Defendant's own formal and informal policies and procedures, which have been adopted as custom.

14. On some date prior to July 15, 2023, the Plaintiff, Michael Trump, was arrested on a simple possession charge and brought to the Defendant's prison facility, known as "Montgomery County Correctional Facility" and located at 60 Eagleville Road, Eagleville, Pennsylvania, said arrest and criminal charges being related to non-violent offenses.

15. The Plaintiff had previously suffered a significant knee injury which required approximately nine surgeries.

16. During the course of a prior incarceration, due to the previous knee injury, the Plaintiff was determined by the Defendants' own physicians and/or medical personnel to be a fall risk and was accordingly and in response thereto, placed on "bottom bunk status" and/or given a "bottom bunk chip," wherein he was directed and mandated to be provided with sleeping accommodations of low height and in close proximity to the floor to avoid the necessity for use of a ladder with the risk of an involuntary fall while climbing up to or down from his bed specifically to prevent and avoid serious harm and injury to him in the case of such a fall.

17. The above said "bottom bunk status" and/or given a "bottom bunk chip" was in effect and continuing through the incarceration which commenced on July 15, 2023.

18. Subsequent to arriving at the Defendant's facility, the Plaintiff was taken to the Defendant's medical unit, indexed and placed into a cell in an area designated as "Q Pod."

19. At all times material and relevant to the instant matter, the Defendant's Q-Pod's housing was formatted as bunk beds in an "open dorm" setting.

20. Subsequent to being evaluated at the Defendant's medical unit and being indexed, the Plaintiff was escorted by Correctional Officer "Hoyt," Correctional Officer "Coakley" and/or John Doe to Q-Pod, at which time he was instructed to select a bed.

21. Upon making an initial observation of the housing arrangements within Q-Pod, the Plaintiff observed that all of the bottom bunks were occupied and that there were no bottom bunks available for his use.

22. The Plaintiff informed Correctional Officer "Hoyt," Correctional Officer "Coakley" and/or John Doe that he was medically restricted to a bottom bunk due to medical necessity and requested that he be provided with a bottom bunk.

23. Correctional Officer "Hoyt," Correctional Officer "Coakley" and/or John Doe informed the Plaintiff that they would not provide the Plaintiff with a bottom bunk and his sole option was to have another inmate trade or permit the Plaintiff to have their bunk.

24. The Plaintiff made complaints to Correctional Officer "Hoyt," Correctional Officer "Coakley" and/or John Doe and other correctional officers requesting that he be provided with a bottom bunk.

25. On or about July 18, 2023, the Plaintiff, Michael Trump, was attempting to climb the ladder to access his top bunk when, at which time and place, his knee buckled and he lost his balance and fell, thereby causing him to suffer severe and debilitating injuries which included, but were not limited to, ligamentous tears of his right biceps, fractures and torn tendons in his right shoulder and a hernia.

26. Following the above accident, the Plaintiff was taken to Einstein Medical Center, at which time the Plaintiff was advised that he would require three surgeries to repair the injuries which

he suffered in the course of the above accident, said surgeries required to be performed in the near future and still within his period of incarceration.

27. Upon returning to the Defendant's facility, the Plaintiff sought to schedule the above surgeries at Einstein Hospital.

28. The Defendant denied the Plaintiff's request to schedule the above said surgeries, informing him that the Defendant deemed said surgeries to be elective and that he would not be permitted to be off of the premises for these surgeries during his period of incarceration.

29. The Defendant denied the Plaintiff's request to obtain medical treatment at an outside medical facility.

30. In or about November, 2023, due to other pending charges, the Plaintiff was transferred to Berks County Correctional Facility via Chester County Correctional Facility.

31. As the direct result of the Plaintiff's injuries resulting from the July 18, 2023 fall from the ladder and his resultant poor physical condition, the Plaintiff was transferred to Reading Hospital, where he underwent bilateral hernia surgery.

32. On or about February 2, 2024, the Plaintiff was transferred back to Defendant, Montgomery County's facility, where he resumed his incarceration.

33. Upon returning the Defendant, Montgomery County's facility, the Plaintiff, despite making repeated requests to Correctional Officer "Small" be provided with a bottom bunk, was instead assigned to a top level bunk, despite and contrary to his post-surgical medical restrictions and his already-existing bottom bunk status.

34. Due to the repeated use of a ladder to access his bunk, the Plaintiff re-injured his abdomen and groin, causing a reactive hydrocele injury.[1]

35. At no time during the Plaintiff's incarceration at Defendant Montgomery County's facility was he provided with a bottom bunk despite his medical necessity, multiple medical directives and his repeated requests and complaints.

36. The Plaintiff's hernia was caused to continue to significantly worsen due to the failure to provide him with a bottom bunk, which forced him to utilize the ladder regularly to access his bunk.

37. At all times material and relevant to the instant Complaint, the Defendants acted through their employees, agents and prison guards/corrections officers under color of state law and utilized such power to compel the Plaintiff to comply with all orders and directives directed to him.

38. At all times material and relevant to the instant matter, the Defendants were aware of the medical necessity for the Plaintiff to be provided with a bottom bunk due to his physical limitations and knew that the failure to provide him with such accommodation would create the high probability of him falling to the floor from an excessive height and suffering significant injuries.

### THE PLAINTIFF'S CONSTITUTIONAL RIGHTS

39. The Eighth Amendment to the Constitution of the United States of America prohibits the infliction of cruel and unusual punishment upon inmates.

40. The Fourteenth Amendment to the Constitution of the United States of America prohibits the infliction of cruel and unusual punishment upon pre-trial detainees.

---

[1] A hydrocele is a type of swelling in the scrotum, the pouch of skin that holds the testicles. This swelling happens when fluid collects in the thin sac that surrounds a testicle.

41.  42 U.S. Code §1983 provides a civil remedy for the violation of an individual's Constitutional rights, providing that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42.  The United States Supreme Court, in <u>Monell v. New York City Dept. of Social Servs.</u>, 436 US 658, 690 (1978), also permitted an action to be brought against the governmental body, holding:

> [M]unicipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

43.  The Plaintiff, as a citizen of the United States of America, holds certain constitutional rights, as follows:

    (a)  right to liberty;

    (b)  right to reasonable personal safety while in custody;

    (c)  right to be free from cruel and unusual punishment;

    (d)  protection of health and welfare;

    (e)  right to reasonable compliance with medical directives;

    (f)  right to a bottom bunk when medically indicated;

  (g)  failure to provide proper conditions of confinement;

  (h)  right to necessary and appropriate medical care;

  (i)  substantive and procedural due process as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution, and are remediable pursuant to 42 U.S.C. § 1983.

## COUNT I

### MICHAEL TRUMP V. COUNTY OF MONTGOMERY D/B/A MONTGOMERY COUNTY CORRECTIONAL FACILITY

44. The Plaintiff incorporates herein, by reference thereto, paragraphs one through forty-three, inclusive, as though the same were set forth herein at length.

45. At all times material and relevant to the instant Complaint, all actions, inactions and omissions were taken pursuant to and under the Defendant's training, control direction, command and supervision in accordance to its customs, policies and procedures relating to:

  (a)  right to reasonable compliance with medical directives;

  (b)  right to a bottom bunk when medically indicated;

  (c)  failure to provide proper conditions of confinement; and

  (d)  right to necessary and appropriate medical care.

46. At all times material and relevant to the instant Complaint, the agents, employees, prison guards and correctional officers of the Defendant acted under color of state law and pursuant to the Defendant's own formal and informal customs, policies and procedures.

47. At all times material and relevant to the instant Complaint, the Plaintiff was an inmate at the Defendant's correctional facility and relied upon the Defendant for all aspects of safety,

housing assignments, medical care and access to medical care and was under the Defendant's control and power in regard to said aspects of care.

48.     At all times material and relevant to the instant matter, the Defendant was aware of the Plaintiff's repeated requests to have a bottom bunk assignment.

49.     At all times material and relevant to the instant matter, the Defendant was aware of the Plaintiff's need for medical care and access to outside medical facilities.

50.     The Defendant had the duty to train, instruct, direct and supervise its employees as to the constitutional rights of its inmates, and specifically the Plaintiff, as set forth above.

51.     The Defendant failed to implement and promulgate such policies and procedures and to then supervise and train its prison guards and correctional officers in regard thereto in order to protect the constitutional rights of the Plaintiff.

52.     The Defendant failed to implement and promulgate such policies and procedures and to then supervise and train its prison guards and correctional officers in regard thereto in order to prevent constitutional violations of the rights of the Plaintiff.

53.     The constitutional violations by the Defendant, inflicted upon the Plaintiff due to a failure to implement, train and supervise its prison guards and correctional officers consisted, inter alia, of the following:

    (a)     failing to provide the Plaintiff with a ground level sleeping accommodation or bottom bunk, when the Defendant knew said provision was essential and a medical necessity for the Plaintiff's safety;

    (b)     failing to provide the Plaintiff with a ground level sleeping accommodation or bottom bunk when the Defendant was aware that the failure to do so had a high likelihood of causing injury to the Plaintiff;

(c)     failing to provide the Plaintiff with a ground level sleeping accommodation or bottom bunk contrary to and direct contravention of the medical directives of Defendants' own physicians/medical personnel;

(d)     placing the Plaintiff into a housing unit where there was no bottom bunk available for the Plaintiff;

(e)     violating, countermanding, disregarding, ignoring and failing to comply with the medical orders issued by the Defendants' own physicians, when the Defendants were aware that the failure to follow such orders had a high likelihood of resulting in injury to the Plaintiff;

(f)     failure to assign and place the Plaintiff in a cell where a bottom bunk was available for his use;

(g)     failing to make reasonable efforts to comply with the Plaintiff's medical restrictions;

(h)     failing to provide the Plaintiff with a bottom bunk or ground level sleeping accommodations;

(i)     failure to place a temporary bunk, bed or "Stack-a-Bunk" on or at floor level within the Plaintiff's cell for his use;

(j)     failure to permit the Plaintiff to schedule and obtain medically necessary surgeries;

(k)     failure to permit the Plaintiff to obtain medical treatment from at an outside medical facility; and

(l)     failure to provide proper conditions of confinement; and

(m)     failing to provide the Plaintiff with the required heightened standard of care of a business invitee, due him as an individual in custody.

54. The conduct of the Defendant, as set forth above, violated Plaintiff's constitutional rights as follows:

    (a)    right to liberty;

    (b)    right to reasonable personal safety while in custody;

    (c)    right to be free from cruel and unusual punishment;

    (d)    protection of health and welfare;

    (e)    right to reasonable compliance with medical directives;

    (f)    right to a bottom bunk when medically indicated;

    (g)    failure to provide proper conditions of confinement;

    (h)    right to necessary and appropriate medical care;

    (i)    substantive and procedural due process as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution, and are remediable pursuant to 42 U.S.C. § 1983.

55. The above conduct, and the Plaintiff's injuries suffered therefrom and described below, was the direct result of the Defendant's failure to implement and promulgate appropriate policies to protect the constitutional rights of inmates and prevent violations of the same.

56. The above conduct, and the Plaintiff's injuries suffered therefrom and described below, was the direct result of the Defendant's failure to train and supervise its prison guards and correctional officers in such policies to protect the constitutional rights of inmates and prevent violations of the same.

57. The conduct of the Defendant, as set forth above, acting under color of state law, was recklessly and deliberately indifferent to the safety, bodily integrity well-being and liberty of the

Plaintiff, and was committed in conscious disregard for the substantial risk of causing harm to the Plaintiff, and was so egregious as to shock the conscience.

58. The conduct of the Defendant as set forth above violated Plaintiff's constitutional rights to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment and the Fourteenth Amendment to the United States Constitution, as the Defendant (1) was aware of the unjustifiable risk to the Plaintiff, (2) failed to take reasonable steps to abate the risks, and (3) the expected harm did occur, and, as such, and are remediable pursuant to 42 U.S.C. § 1983.

59. At all times material and relevant to the instant Complaint, the Defendant was aware that:

(a) the implementation, training and supervision of policies relating to each of the topics as set forth above were regular and frequent occurrences confronted within its correctional facility;

(b) there was a high probability that its prison guards and correctional officers would be unable, resistant to or lacking the skills to properly handle such situations so as to avoid mishandling said situations; and

(c) the failure to handle said situations properly or mishandling of said situations would result in the deprivation of constitutional rights.

60. By information and belief, other inmates have suffered constitutional deprivations similar to that suffered by the Plaintiff while in the Defendant's custody.

## COUNT II

### MICHAEL TRUMP V. CORRECTIONAL OFFICER "HOYT," CORRECTION OFFICER "COAKLEY," CORRECTIONAL OFFICER SMALL AND JOHN DOE

61.     The Plaintiff incorporates herein, by reference thereto, paragraphs one through sixty, inclusive, as though the same were set forth herein at length.

62.     The constitutional violations by the Defendant correctional officers, inflicted upon the Plaintiff consisted, inter alia, of the following:

(a)     failing to provide the Plaintiff with a ground level sleeping accommodation or bottom bunk, which the Defendant knew was essential and a medical necessity for the Plaintiff's safety;

(b)     failing to provide the Plaintiff with a ground level sleeping accommodation or bottom bunk when the Defendant was aware that the failure to do so had a high likelihood of resulting in injury to the Plaintiff;

(c)     failing to provide the Plaintiff with a ground level sleeping accommodation or bottom bunk contrary to and direct contravention of the medical directives;

(d)     placing the Plaintiff into a housing unit where there was not a bottom bunk available for the Plaintiff;

(e)     violating, countermanding, disregarding, ignoring and failing to comply with medical orders when the Defendants were aware that the failure to follow such orders had a high likelihood of resulting in injury to the Plaintiff;

(f)     failure to assign and place the Plaintiff in a cell where the bottom bunk was available for his use;

(g) failing to make reasonable efforts to comply with the Plaintiff's medical restrictions;

(h) failing to provide the Plaintiff with a bottom bunk or ground level sleeping accommodations;

(i) failure to place a temporary bunk, bed or "Stack-a-Bunk" on or at floor level within the Plaintiff's cell for his use; and

(j) failing to correct or cure the improper placement of the Plaintiff into a top bunk in response to the Plaintiff's complaints in regard to said placement;

(k) disregarding the Plaintiff's complaints about his placement into a top bunk;

(l) failure to provide proper conditions of confinement;

(m) failure to permit the Plaintiff to schedule and obtain medically necessary surgeries; and

(n) failure to permit the Plaintiff to obtain medical treatment from at an outside medical facility.

### COUNT III

### MICHAEL TRUMP V. COUNTY OF MONTGOMERY D/B/A MONTGOMERY COUNTY, CORRECTIONAL OFFICER "HOYT," CORRECTION OFFICER "COAKLEY," CORRECTIONAL OFFICER "SMALL" AND JOHN DOE

63. The Plaintiff incorporates herein, by reference thereto, paragraphs one through sixty-two, inclusive, as though the same were set forth herein at length.

64. As a direct and proximate result of the violations of the Plaintiff's Constitutional rights, the Plaintiff was caused to suffer severe and debilitating injuries as set forth above and herein.

65. As the direct and proximate result of this accident, the Plaintiff, Michael Trump, has suffered serious and permanent injuries, including injuries to his left arm, right shoulder, testicles,

abdomen; a hernia; contusions and abrasions, severe damage to his nerves and nervous system, and various other ills and injuries.

66. As a further result of this accident, the Plaintiff has been obligated to receive and undergo medical attention and care for his injuries, and to incur various expenses for said care, and he may be obligated to continue to expend such sums and to incur such expenses for an indefinite period of time in the future.

67. As a further result of this accident, the Plaintiff has suffered an injury which may be in full or part a cosmetic disfigurement which is or may be permanent, irreparable, or severe.

68. As a further result of this accident, the Plaintiff has been unable to attend to his daily chores, duties and occupations, and may be unable to do so for an indefinite time in the future.

69. As a further result of this accident, the Plaintiff has or may suffer severe loss of his earnings and impairment of his earning capacity and power, and may continue to suffer such a loss for an indefinite time in the future.

70. As a direct and reasonable result of the accident, the Plaintiff has and may continue to in the future incur other financial expenses or losses which to which he may otherwise be entitled to recover.

71. As a further result of the accident, the Plaintiff has suffered severe physical pain, aches, mental anguish, and humiliation, inconveniences, and loss of life's pleasures, and he may continue to suffer the same for an indefinite time in the future.

**WHEREFORE**, the Plaintiff, Michael Trump, demands damages of the Defendants herein in a sum in excess of $75,000.00, plus interest, costs and attorneys fees.

                                  **SCHMIDT, ZIMMERMAN & FLEISHMAN**

                            By:  /s/ Jeffrey D. Schmidt
                                  JEFFREY D. SCHMIDT, ESQUIRE
                                  JEFFREY I. ZIMMERMAN, ESQUIRE
                                  MATTHEW A. FLEISHMAN, ESQUIRE
                                  261 Old York Road
                                  Suite 707
                                  Jenkintown, PA 19046
                                  Phone - (215)770-7443
                                  Attorney I.D. No. 91583 / 30600 / 316949

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL TRUMP<br>61 West King Street<br>Pottstown, PA 19464 | : | CIVIL ACTION - LAW |
| | : | NO. |
| v. | : | ASSESSMENT OF DAMAGES<br>HEARING IS REQUIRED |
| COUNTY OF MONTGOMERY<br>d/b/a Montgomery County<br>Correctional Facility<br>60 Eagleville Road<br>Eagleville, PA 19403<br>    and<br>CORRECTIONAL OFFICER "HOYT"<br>    and<br>CORRECTIONAL OFFICER "COAKLEY"<br>    and<br>CORRECTIONAL OFFICER "SMALL"<br>    and<br>JOHN DOE | :<br><br>:<br><br>:<br><br>:<br><br>:<br><br>: | JURY TRIAL DEMANDED |

**VERIFICATION**

I, Jeffrey I. Zimmerman, Esquire, being duly sworn according to law, deposes and says that he is authorized to make this Verification on behalf of the Plaintiff and that the facts set forth in the foregoing Pleading are true and correct to the best of his knowledge, information and belief.

This statement is made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

                                                        /s/ Jeffrey D. Schmidt
                                                        Jeffrey D. Schmidt

Date:  April 28, 2025